NOT DESIGNATED FOR PUBLICATION

No.117,477

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of
H.D. III, J.L.C., J.C., and J.D.,
Minor Children.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed October 20, 2017.
Affirmed.

*Christopher Cuevas*, of Kansas City, for appellant.

*Ashley Hutton*, assistant district attorney, and *Mark Dupree*, district attorney, for appellee.

Before STANDRIDGE, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM: A.D. appeals the termination of her parental rights to her four children. She argues the district court improperly terminated her parental rights pursuant to K.S.A. 2016 Supp. 38-2269. Finding no error, we affirm the district court.

A.D. is the mother of J.D., born in 2004; H.D. III, born in 2005; J.L.C., born in 2008; and J.C., born in 2014. A petition was filed on February 10, 2016, to find the children as children in need of care. The Department for Children and Families (DCF), had received multiple reports regarding A.D. and the children about medical neglect, physical abuse, and lack of supervision. A.D. had KVC Family Preservation in the home due to a report on October 15, 2015, which involved H.D. III and J.L.C. being brought to school by a stranger after he found the children rummaging through his garage.

1

A.D. had been reluctant to work with Family Preservation and struggled with compliance and program recommendations. DCF continued to receive abuse and neglect concerns after the first 2015 report. On November 18, 2015, concerns of lack of supervision, physical abuse, and sexual abuse were received. DCF received an abuse and neglect report concerning A.D. and the father to J.L.C. and J.C. On December 11, 2015, concerns of physical and sexual abuse were reported regarding H.D. III and J.L.C. touching another youth inappropriately while at A.D.'s home.

On January 22, 2016, concerns of lack of supervision were reported which stated A.D. continued to leave her younger children in the care of J.D. The report also stated H.D. III and J.L.C. engaged in inappropriate behavior after finding a pornographic movie in the home. In addition, the report contained concerns regarding medical neglect when H.D. III was without his inhaler at school, which he needed daily for his severe asthma. On January 26, 2016, a lack of supervision report stated A.D. left the children with J.D. while she went to a club. The report stated A.D. had smoked marijuana in the presence of the children before leaving. On January 29, 2016, a report about medical neglect stated H.D. III and J.L.C. had not received the necessary medical treatment for their asthma.

On February 1, 2016, a concern of medical neglect stated H.D. III had boils on his body that were oozing fluid and A.D. was informed of the boils on January 18, 2016, but she did not seek medical treatment. Instead, A.D. popped the boils as treatment.

A.D. admitted to using marijuana on a regular basis in the home but not in the presence of the children. She submitted a urinalysis test (UA) to Family Preservation on February 2, 2016, which indicated she was positive for THC and cocaine. Substance abuse was a concern in the home, and a prior report indicated H.D. III gained access to marijuana in the home and was suspected of using marijuana. DCF requested temporary custody of the children due to concerns of abuse and neglect in the home. On February

2

11, 2016, the district court placed the children in the temporary custody of DCF. In addition, A.D. stipulated to the alleged facts.

After the children were found to be children in need of care, A.D. was given tasks to complete. She was to maintain stable and appropriate housing and provide verification; maintain stable income and provide verification; sign all necessary releases; contact the court services officer once a month and prior to address changes; complete a psychosocial assessment and follow recommendations; submit random and negative UAs; complete a substance abuse assessment and follow recommendations; complete a parenting assessment and follow recommendations; and complete a mental health assessment and follow recommendations. H.D. III and J.L.C. were also to complete a mental health assessment and follow recommendations.

The first review hearing was on June 8, 2016. After the hearing, the children remained in the custody of DCF and the orders for A.D. remained the same. The next review hearing was held on September 7, 2016. The orders remained the same for A.D., and it was asked that a termination of parental rights hearing be scheduled.

The State filed its motion for termination of parental rights on September 14, 2016. The motion alleged that A.D. failed to comply with the orders, specifically, she failed to sign releases of information, was currently unemployed, failed to provide verification of stable housing, did not keep in consistent contact with the court services officer, failed to complete the recommendations of level I outpatient treatment, did not complete a parenting assessment, and did not complete recommended group therapy. A.D.'s UAs came back as follows: June 8, 2016—Positive for THC; July 12, 2016—No show; July 21, 2016—No show; August 10, 2016—No show; August 24, 2016—Positive for THC and cocaine; and August 31, 2016—Positive for THC. Based on this information, the State requested the district court find reintegration was not a viable option and A.D.'s rights should be terminated.

3

The termination of parental rights hearing was held on March 2, 2017. Because J.C. had not been living with A.D. until recently, the district court first heard evidence on whether he should be found a child in need of care. The court found J.C. was in fact living with A.D. and found him a child in need of care.

The district court then heard evidence regarding termination. A.D. testified she was not currently employed. She cleaned apartment buildings from time to time. She did not have stable housing before trial that day, but she was supposed to sign a lease later that day. It was a one bedroom apartment, but she stated if she got her kids back she would get a bigger home. She testified she had not stayed in contact with her court services officer, Kristen Gardner. A.D. did get a RADAC assessment the day before trial and it was recommended she have level I outpatient treatment. She started her parenting assessment but did not complete it. She testified she started her parenting assessment in March of the previous year and never went back to finish. A.D. had a health assessment and was told to get back on her medication. However, her Medicaid was terminated so she stated she could not resume taking her medication. She admitted she had submitted a UA before the hearing and had tested positive for THC but stated she had not smoked anything. She did not think it was recommended to attend individual therapy. A.D. did make all of her visits with her children.

Rachel Stompoly, a KVC permanency case manager, testified she had been on the case since December 2, 2016. As of the hearing, A.D. had not reported current employment and might have no housing. However, KVC had no way of verifying A.D. had housing and had not had the opportunity to go look at the housing. Stompoly testified A.D. only completed one UA while she was on the case and she had requested six UAs. Further, Stompoly had no verification that A.D. had completed a parenting assessment. Visits with the children had never progressed beyond supervised. When asked what her recommendation for permanency was, Stompoly stated she did not see a positive

4

outcome in this case. In all of the interactions of the children with A.D. it was clear the children were negatively affected by their traumatic history, by this case, and by the visits. Stompoly recommended that termination occur. She said all of the children except J.C. were in therapy, the two middle children were on medication, J.L.C. told her he was stealing because he had been taught to steal by men in his life, and the children had been taught to lie, manipulate, and steal. H.D. III had over 30 placements. Stompoly stated that termination was in the best interests of the children.

The district court found by clear and convincing evidence that A.D. was unfit by reason of conduct or condition which rendered her unable to properly care for the children and the conduct or condition was unlikely to change in the foreseeable future. The court stated that A.D. "hasn't done anything." Every UA she submitted was positive. The court said A.D. was never going to change her lifestyle. More than just using drugs, she had created a lifestyle around drug use which the children were growing up in. The court said the children had to be rescued from the multiple men, drug use, lying, stealing, and manipulation.

Specifically, the district court found A.D. used narcotic or other dangerous drugs which rendered her unable to care for the children's needs, that agencies had provided reasonable efforts and were unable to rehabilitate the family, there was a lack of effort on A.D.'s part to adjust her circumstances to meet the children's needs, and A.D. had failed to carry out a reasonable plan to work toward reintegrating the children into her home. The children were to remain in DCF custody.

A.D. appeals. She argues the district court improperly terminated her parental rights pursuant to K.S.A. 2016 Supp. 38-2269.

The district court found A.D. to be an unfit parent pursuant to K.S.A. 2016 Supp. 38-2269. In order to make this finding, the district court must find by clear

5

and convincing evidence the parent is unfit and shall consider, but is not limited to, the following:

> "(1) Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child;
>
> "(2) conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;
>
> "(3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child;
>
> "(4) physical, mental, or emotional abuse or neglect or sexual abuse of a child;
>
> "(5) conviction of a felony and imprisonment;
>
> "(6) unexplained injury or death of another child or stepchild of the parent or any child in the care of the parent at the time of injury or death;
>
> "(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;
>
> "(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and
>
> "(9) whether the child has been in extended out of home placement as a result of actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply." K.S.A. 2016 Supp. 38-2269(b).

Here, the court found that A.D. was unfit under factors 3, 7, and 8. Each of these factors will be examined individually.

Under factor 3, A.D.'s drug use was heavily documented throughout the course of the case. She tested positive for drugs each time she took a UA, specifically THC and cocaine. A.D. even tested positive for THC on the day of the termination of parental rights hearing. She failed to take several of her UAs and failed to complete the recommendation of level I outpatient drug treatment. The first report to DCF was in 2015, and A.D. was never able to give a negative UA and never completed drug

6

treatment. There was clear and convincing evidence for the district court to find K.S.A. 2016 Supp. 38-2269(b)(3) had been met.

Under factor 7, failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family—KVC continued its efforts throughout the course of the case. When the first reports came in to DCF, A.D. was told to work with Family Preservation. After the children were found to be children in need of care, A.D. was given a task plan to complete. These tasks remained the same throughout the duration of the case. Further, KVC is not required to exhaust all their resources to rehabilitate a parent and a "herculean effort" is not required for a court to find a parent unfit. *In re S.C.*, No. 107,950, 2012 WL 5392188, at *3 (Kan. App. 2012) (unpublished opinion) (citing *In re B.K.S*, No. 95,297, 2006 WL 2443937, at *2 [Kan. App. 2006] [unpublished opinion]). This factor was met by clear and convincing evidence.

Under factor 8, A.D. had from 2015 to 2017 to complete the tasks assigned to her. However, throughout the duration of the case her tasks remained the same because she failed to complete them or failed to show verification of completion. From June 2016 to March 2017, A.D. tested positive for THC or cocaine. Up until the date of trial, A.D. did not have housing. KVC had no way of verifying that A.D. was going to obtain housing and did not have the opportunity to do a walkthrough of the home. A.D. had not reported current employment and failed to provide verification of a parenting assessment. Visits with the children never progressed beyond supervised. There was clear and convincing evidence for the district court to find K.S.A. 2016 Supp. 38-2269(b)(8) had been met.

The district court also found A.D. was unfit to parent the children under K.S.A. 2016 Supp. 38-2269(c)(3). This statute states that when a child is not in the physical custody of the parent, the court shall consider, but is not limited to:

"(1) Failure to assure care of the child in the parental home when able to do so;

7

"(2) failure to maintain regular visitation, contact or communication with the child or with the custodian of the child;

"(3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into the parental home; and

"(4) failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay." K.S.A. 2016 Supp. 38-2269(c)

There was clear and convincing evidence A.D. had failed to carry out a reasonable plan directed toward integration. She had the same task plans throughout the duration of the case, she never progressed beyond supervised visits with her children, she continued to test positive for THC and cocaine, she was unemployed, and she did not provide verification for housing or a parenting assessment.

The district court had clear and convincing evidence for the factors it found relevant under K.S.A. 2016 Supp. 38-2269. The district court is affirmed on these issues.

We now turn to whether the district court's conclusion that A.D.'s conditions made her unfit to parent were unlikely to change in the foreseeable future was supported by clear and convincing evidence.

The Kansas Legislature has specified that the State must prove "by clear and convincing evidence that the child is a child in need of care." K.S.A. 2016 Supp. 38-2250. In addition to the child in need of care adjudications, the clear and convincing evidence standard of review applies to all termination of parental rights cases. K.S.A. 2016 Supp. 38-2269(a). Clear and convincing evidence is that "which is sufficient to establish that the truth of the facts asserted is 'highly probable.'" *In re B.D.-Y.*, 286 Kan. 686, 696, 187 P.3d 594 (2008).

K.S.A. 2016 Supp. 38-2269(a) states:

"When the child has been adjudicated to be a child in need of care, the court may
terminate parental rights or appoint a permanent custodian when the court finds by clear
and convincing evidence that the parent is unfit by reason of conduct or condition which
renders the parent unable to care properly for a child and the conduct or condition is
unlikely to change in the foreseeable future."

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

When determining how to define "foreseeable future," the district court examines the term from the perspective of a child. *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). Children and adults have different perceptions of time, and a child has the right to permanency within a time frame that is reasonable to them. 50 Kan. App. 2d at 1170. The district court may draw inferences from the past conduct of a parent to determine that the parent's conduct will not likely change in the foreseeable future. *In re Z.C.*, No. 97,032, 2007 WL 1310097, at *3 (Kan. App. 2007) (unpublished opinion).

The first report came to DCF in 2015. The children had been placed out of the home since February 11, 2016. H.D. III had over 30 placements. Over the course of the case, A.D. failed to complete her tasks, which remained the same throughout the duration of the case. She continued to test positive for THC and cocaine, including on the day of the termination hearing. A.D. gave the district court ample evidence that her behavior would not change. The court had clear and convincing evidence to find that A.D.'s unfitness to parent her children was unlikely to change in the foreseeable future. The district court is affirmed.

9

We finally turn to whether the district court abused its discretion when it found that termination of A.D.'s parental rights was in the best interests of the children.

Under K.S.A. 2016 Supp. 38-2269, the district court may terminate parental rights when it finds by clear and convincing evidence that the parent is unfit and the conduct is unlikely to change in the foreseeable future. If the court makes this finding, it then shall consider whether termination of parental rights is in the best interests of the child. K.S.A. 2016 Supp. 38-2269(g)(1). In making this determination, the court gives primary consideration to "the physical, mental and emotional health of the child." K.S.A. 2016 Supp. 38-2269(g)(1). "If the physical, mental or emotional needs of the child would best be served by termination of parental rights, the court shall so order." K.S.A. 2016 Supp. 38-2269(g)(1).

The district court is in the best position to make findings as to what is in the best interests of the child. *In re K.P.*, 44 Kan. App. 2d 316, 318, 235 P.3d 1255 (2010). Therefore, "its judgment will not be disturbed in the absence of an abuse of judicial discretion." 44 Kan. App. 2d at 318. "A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

Here, the children have been placed out of home since February 11, 2016. As stated, H.D. III has had over 30 placements. Stompoly testified that it was clear the children were negatively affected by their traumatic history, by this case, and by visits with A.D. All of the children, except J.C., were in therapy, the two middle children were on medication, and J.L.C. had told Stompoly he was stealing because he had been taught to steal by the men in his life. The district court stated A.D. had created a lifestyle around drugs which the children had grown up in and they needed to be rescued from that lifestyle.

10

There was clear and convincing evidence that termination of A.D.'s parental rights was in the best interests of the children. The district court is affirmed.

Affirmed.